CT Corporation

**Service of Process Transmittal**
01/27/2014
CT Log Number 524290596

**TO:** Jennifer Lauro
The Hanover Insurance Group
440 Lincoln Street, N-430
Worcester, MA 01653

**RE:** **Process Served in Virginia**

**FOR:** Massachusetts Bay Insurance Company (Domestic State: NH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Shapiro Brown & Alt, LLP, etc., Pltf. vs. Massachusetts Bay Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Fairfax County Circuit Court, VA<br>Case # CL20140000459 |
| **NATURE OF ACTION:** | Plaintiff held the funds so deposited for the benefit of professional as substitute trustee under a deed of trust |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Glen Allen, VA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/27/2014 at 13:00 |
| **JURISDICTION SERVED:** | Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service |
| **ATTORNEY(S) / SENDER(S):** | Raighne C. Delaney<br>Bean, Kinney & Korman, P.C.<br>2300 Wilson Blvd.<br>7th Floor<br>Arlington, VA 22201<br>703-525-4000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/28/2014, Expected Purge Date: 02/02/2014<br>Image SOP<br>Email Notification, Service of Process ogclitmail@hanover.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Lisa Uttech<br>4701 Cox Road<br>Suite 285<br>Glen Allen, VA 23060<br>804-217-7255 |



Page 1 of 1 / AK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SPS**

COMMONWEALTH OF VIRGINIA
*CIRCUIT COURT OF FAIRFAX COUNTY*
**4110 CHAIN BRIDGE ROAD**
**FAIRFAX, VIRGINIA 22030**
**703-691-7320**
**(Press 3, Press 1)**

Shapiro Brown & Alt LLP  vs.  Massachusetts Bay Insurance Company

CL-2014-0000459

TO:     Massachusetts Bay Insurance Company
        CT Corporation System RA
        4701 Cox Road Suite 285
        Glen Allen VA 23060

### SUMMONS –CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby
notified that unless within  21 days after such service, response is made by filing in the
Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and
charges may be taken as admitted and the court may enter an order, judgment or decree
against such party either by default or after hearing evidence.

**APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.**
Done in the name of the Commonwealth of Virginia, on Monday, January 13, 2014.

JOHN T. FREY, CLERK

By: *Jemima F Andriadis*
        Deputy Clerk

**Plaintiff's Attorney:**  Raighne C. Delaney

FILED
CIVIL INTAKE

2014 JAN 10  PM 3: 50

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

**V I R G I N I A:**

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

SHAPIRO BROWN & ALT, LLP,
Formerly SHAPIRO & BURSON, LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109

       Plaintiff,

  v.

MASSACHUSETTS BAY INSURANCE
COMPANY

Serve:

CT Corporation System
4701 Cox Road, Suite 285
Glen Allen, VA 23060-0000
Registered Agent

       Defendant.

**2 0 1 4  0 0 4 5 9**

Law No. _____

**COMPLAINT**

The plaintiff, Shapiro Brown & Alt, LLP, formerly Shapiro & Burson, LLP ("Shapiro")

sues the defendant, Massachusetts Bay Insurance Company ("Insurance Company"), on the

following allegations:

**The Parties**

1.    Shapiro is a limited liability partnership that provides legal services in Virginia.

       Shapiro's legal services include representing mortgage lenders and trustees under deeds

       of trust.

2.    Insurance Company is a Massachusetts insurance company that transacts insurance

       business in Virginia.

**The Policy**

3.   On or about April 22, 2011, Insurance Company issued a Commercial Crime Policy (the
     "Policy") to Shapiro, which was then known as Shapiro & Burson, LLP. A copy of the
     Policy is attached as <u>Exhibit 1</u>. The policy insured Shapiro against loss or damage to
     money or property sustained by Shapiro's clients, including money that a client held for
     others. See Exhibit 1, Clients' Property endorsement. The policy protection for clients'
     funds applies irrespective of whether a theft occurred during the policy period, before the
     policy period or both.

**The Losses**

4.   During 2010 and 2011, Shapiro provided legal representation to Professional Foreclosure
     Corporation of Virginia ("Professional") in connection with foreclosure sales conducted
     by Professional as substitute trustee under deeds of trust. Shapiro's services for
     Professional included acting as closing and escrow agent for the foreclosure sales.

5.   In connection with the closing and settlement of each foreclosure sale, the sales proceeds
     were deposited in Shapiro's escrow account.

6.   Shapiro held the funds so deposited for the benefit of Professional, as substitute trustee
     under a deed of trust.

7.   As substitute trustee under a deed of trust, Professional held the foreclosure sale proceeds
     for the benefit of others – namely, the party secured by the deed of trust and the former
     owner of the mortgaged property.

8.   If any sales proceeds remained after paying the mortgage loan and the costs of the
     foreclosure sale, Professional instructed Shapiro to determine to whom the surplus funds
     were owed and remit the funds to such party. In some cases that would be a party

holding a junior lien interest, but in most cases, the party entitled to the surplus funds was the former owner of the mortgaged property. One of Shapiro's employees then prepared a surplus funds check in the name of the proper party or arranged to wire the surplus funds to that person or entity.

9.    Shapiro's former employee who arranged for these payments stole client funds from Shapiro's escrow account by delivering the surplus funds checks to an accomplice, who used false identification to cash the checks. In one instance, the former employee stole the surplus funds by wiring them to an accomplice.

10.   Shapiro replaced the stolen funds, totaling $1,323,336.30, because Shapiro was legally accountable to Professional for the former employee's thefts.

11.   The Policy obligates Insurance Company to indemnify Shapiro for the resulting losses sustained by its client.

12.   Shapiro submitted a timely proof of loss to Insurance Company.

13.   An itemized statement of Shapiro's loss is attached as Exhibit 2.

14.   Insurance Company has refused to pay Shapiro's loss.

Wherefore, Shapiro demands judgment in the amount of $1,323,336.30, pre-judgment interest at 6% per annum from such date as the jury may determine, legal fees in accordance with Virginia Code §38.2-209, and such other and further relief as the nature of this cause may require.

> SHAPIRO BROWN & ALT, LLP
> By Counsel

Raighne C. Delaney, VSB No. 38787
rdelaney@beankinney.com
Rachelle E. Hill, VSB No: 74996
rhill@beankinney.com
Bean, Kinney & Korman, P.C.
2300 Wilson Blvd., 7th Floor
Arlington, VA 22201
(703) 525-4000
Fax: (703) 525-2207

Exhibit I

**POLICY NUMBER: BDR - 1947197**



*Advantage Portfolio*

# COMMERCIAL CRIME POLICY
# DECLARATIONS

In Return For The Payment Of The Premium, And Subject To All The Terms And Conditions Of This Policy, We Agree With You To Provide The Insurance As Stated In This Policy.

**Coverage Is Written:**

[X] Primary     [ ] Excess     [ ] Coindemnity     [ ] Concurrent

| |
|---|
| Company Name Area:  Massachusetts Bay Insurance Company |
| Producer Name Area:  WELLS FARGO INS SERVICES |
| Named Insured: Shapiro & Burson, LLP |
| (Also list any Employee Benefit Plan(s) included as insureds) |
| Mailing Address: 13135 Lee Jackson Highway, #201, Fairfax, VA  22033 |

| Policy Period |
|---|
| From:  April 22, 2011 |
| To:  Until Cancelled 12:01 A.M. at your mailing address shown above. |

| Insurance Agreements | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1. Employee Theft | $ 1,000,000.00 | $ 50,000.00 |
| 2. Forgery Or Alteration | $ 1,000,000.00 | $ 50,000.00 |
| 3. Inside The Premises - Theft of Money And Securities | $ 1,000,000.00 | $ 50,000.00 |
| 4. Inside The Premises - Robbery Or Safe Burglary Of Other Property | $ 1,000,000.00 | $ 50,000.00 |
| 5. Outside The Premises | $ 1,000,000.00 | $ 50,000.00 |
| 6. Computer Fraud | $ 1,000,000.00 | $ 50,000.00 |
| 7. Funds Transfer Fraud | $ 1,000,000.00 | $ 50,000.00 |
| 8. Money Orders And Counterfeit Money | $ 1,000,000.00 | $ 50,000.00 |

Coverage is provided only if an amount is shown opposite an Insuring Agreement.  If the amount is left blank or "Not Covered" is inserted, such Insuring Agreement and any other reference thereto in this policy is deleted.

**If Added by Endorsement:**

| Insuring Agreements | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 9.  Clients' Property | $ 1,000,000.00 | $ 50,000.00 |
| | | |
| | | |
| | | |
| | | |
| | | |

**Endorsements Forming Part Of This Policy When Issued:**

| CR 04 01 05 06 | CR 20 05 08 07 | CR 20 15 08 07 | CR 25 08 08 07 |
|---|---|---|---|
| CR 02 11 08 07 | | | Endorsement 1 |

**Cancellation Of Prior Insurance Issued By Us:**
By acceptance of this Policy you give us notice cancelling prior policy Nos. ;
the cancellation to be effective at the time this Policy becomes effective.

**Countersignature of Authorized Representative**

Name:  Kevin Finn

Title:  Authorized Agent

Signature:  *Kevin Finn*

Date:  April 26, 2011

© ISO Properties, Inc., 2001        CR DS 02 08 07

POLICY NUMBER: BDR 1947197

**CRIME AND FIDELITY**
**CR 25 08 08 07**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INCLUDE SPECIFIED NON-COMPENSATED OFFICERS AS EMPLOYEES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**SCHEDULE**

| Names Or Titles Of Non-Compensated Officers |
|---|
| All Directors & Officers |
|  |
|  |
|  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The definition of "employee" is amended to include
your non-compensated officers shown in the Sched-
ule.

© ISO Properties, Inc., 2006

CRIME AND FIDELITY
CR 04 01 05 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CLIENTS' PROPERTY

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY

**PROVISIONS**

With regard to this Clients' Property Endorsement, the provisions of the coverage form or policy to which this endorsement is attached apply, unless modified by this endorsement.

A. The following insuring agreement is added to Section A. Insuring Agreements:

We will pay for loss of or damage to "money", "securities" and "other property" sustained by your "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons.

B. Under Section D. Exclusions in the Commercial Crime Coverage Form and Commercial Crime Policy, the Acts of Employees, Managers, Directors, Trustees or Representatives Exclusion does not apply to this Insuring Agreement.

C. Under Section E. Conditions:

1. Paragraph (1) of the Duties in the Event of Loss Condition is replaced by the following:

Notify us as soon as possible.

2. The Ownership of Property; Interests Covered Condition is replaced by the following:

The property covered under this Insuring Agreement is limited to property:

a. That your "client" owns or leases; or

b. That your "client" holds for others whether or not your "client" is legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including your "client". Any claim for loss that is covered under this Insuring Agreement must be presented by you.

D. Under Section F. Definitions:

1. The following definitions are added:

a. "Client" means any entity for whom you perform services under a written contract.

b. "Occurrence" means:

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by an "employee", acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

2. The definition of "theft" is replaced by the following:

"Theft" means the unlawful taking of property to the deprivation of your "client".

POLICY NUMBER: BDR 1947197

**CRIME AND FIDELITY**
CR 20 05 08 07

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INCLUDE RETROACTIVE DATE

This endorsement modifies insurance provided under the Discovery Form version of the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

### SCHEDULE

| |
|---|
| **Named Insured:**<br><br>Shapiro & Burson, LLP |
| **Joint Insured(s):** |
| **Entity(ies), Assets Or Liabilities:** |
| **Retroactive Date: 12:01 A.M. on:   4/22/2011** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

1. The following is added to Section E. Conditions:

   a. **Retroactive Date For Named Insured**

   If the Retroactive Date shown in the Schedule applies to the Named Insured as indicated in the Schedule, the first paragraph of Section A. – Insuring Agreements is replaced by the following:

   Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place in its entirety after the Retroactive Date shown in the Schedule which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition.

   b. **Retroactive Date For Joint Insured**

   If the Retroactive Date shown in the Schedule applies to a Joint Insured(s) shown in the Schedule, the first paragraph of Section A. – Insuring Agreements shall be deemed amended as respects such Joint Insured(s) as follows:

   Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" involving the Joint Insured(s) shown in the Schedule, taking place in its entirety after the Retroactive Date shown in the Schedule which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition.

**c. Retroactive Date For An Entity Acquired Through Consolidation, Merger, Or Acquisition**

If the Retroactive Date shown in the Schedule applies to an entity(ies) shown in the Schedule which is acquired through consolidation, or merger, or in which you purchased or acquired assets or liabilities, the first paragraph of Section A. – Insuring Agreements shall be deemed amended as respects such entity(ies) or assets or liabilities, as follows:

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" involving the entity(ies) shown in the Schedule, taking place in its entirety after the Retroactive Date shown in the Schedule which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition.

**2.** The definition of "occurrence" is replaced by the following:

"Occurrence" means:

**a.** Under Insuring Agreement A.1.:

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, after the Retroactive Date shown in the Schedule.

**b.** Under Insuring Agreement A.2.:

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, after the Retroactive Date shown in the Schedule.

**c.** Under All Other Insuring Agreements:

(1) An individual act or event;

(2) The combined total of all separate acts or events whether or not related; or

(3) A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person after the Retroactive Date shown in the Schedule.

© ISO Properties, Inc., 2006

CR 20 05 08 07   ▢

POLICY NUMBER: BDR 1947197

CRIME AND FIDELITY
CR 20 15 08 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# JOINT LOSS PAYABLE

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**SCHEDULE**

| |
|---|
| **Name Of Loss Payee:**<br><br>All Clients<br><br>**Address Of Loss Payee:** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

1. You agree that any loss payable under this insurance shall be paid jointly to you and the Loss Payee shown in the Schedule as its interests may appear and any such payment shall constitute payment to you. We agree that we will make all such payments jointly to you and the Loss Payee, and we will not make any payment solely to you unless we receive a request in writing from the Loss Payee to make such payment to you.

2. This insurance is for your benefit only. It provides no rights or benefits to any other person or organization including the Loss Payee, other than to receive payment for loss as set forth in this endorsement.

   Any claim for loss that is covered under this insurance must be presented by you.

© ISO Properties, Inc., 2006

POLICY NUMBER:   BDR 1947197

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## OMNIBUS NAMED INSURED SCHEDULE- Endorsement 1

**SCHEDULE**

1.     The Named Insured in item 1 in the COMMERCIAL CRIME POLICY DECLARATIONS is amended to include the following:

Shapiro & Burson, LLP

and any entity now in existence or hereinafter created or acquired   which is fifty percent (50%) or more owned, controlled or operated by any of the entities listed above.

Including any LLC, General partnership, Limited Partnership, or entity less than 50% owned who the named insured has financial, management, and operating control.

2.     The insured named in item 1 in the COMMERCIAL CRIME POLICY DECLARATIONS also includes all pension and benefit plans which may or may not be subject to the Employee Retirement Income Security Act of 1974 and which are now in existence or hereinafter created or acquired by any of the entities covered in paragraph 1 of this endorsement.

3.     All other terms, conditions and limitations remain the same except as herein expressly modified.

CRIME AND FIDELITY
CR 02 11 08 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION POLICY

A. Paragraphs (2), (3) and (5) of the Cancellation Of Policy Condition are replaced by the following:

  (2) We may cancel this policy by mailing or delivering to you written notice of cancellation at least:

    (a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    (b) 30 days before the effective date of cancellation if we cancel for any other reason.

  (3) We will mail or deliver our notice to your last mailing address known to us.

  (5) If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

    (a) We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

      (i) At our request;

      (ii) Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

      (iii) And rewritten by us or a member of our company group; or

      (iv) After the first year, if it is a prepaid policy written for a term of more than one year.

    (b) When this policy is cancelled at your request (except when Paragraph (5)(a)(ii), (5)(a)(iii) or (5)(a)(iv) applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

B. The following is added and supersedes any other provision to the contrary:

NONRENEWAL

1. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to you stating the reason for nonrenewal, at least:

  a. 10 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

  b. 30 days before the expiration date if the nonrenewal is for any other reason.

2. We will mail or deliver our notice to your last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2006

CRIME AND FIDELITY
CR 00 22 05 06

# COMMERCIAL CRIME POLICY
# (DISCOVERY FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition E.1.j.:

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery Or Alteration

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b. If you are sued for refusing to pay any instrument covered in Paragraph 2.a., on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises – Theft Of Money And Securities

a. We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

(1) Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

(2) Resulting directly from disappearance or destruction.

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

a. We will pay for loss of or damage to "other property":

(1) Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

(2) Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

 © ISO Properties, Inc., 2005

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

5. **Outside The Premises**

   a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

   b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

6. **Computer Fraud**

   We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

   a. To a person (other than a "messenger") outside those "premises"; or

   b. To a place outside those "premises".

7. **Funds Transfer Fraud**

   We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

8. **Money Orders And Counterfeit Money**

   We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

   a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

   b. "Counterfeit money" that is acquired during the regular course of business.

B. **Limit Of Insurance**

   The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

   If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

C. **Deductible**

   We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

D. **Exclusions**

   1. This policy does not cover:

      a. **Acts Committed By You, Your Partners Or Your Members**

         Loss resulting from "theft" or any other dishonest act committed by:

         (1) You; or

         (2) Any of your partners or "members";

         whether acting alone or in collusion with other persons.

      b. **Acts Of Employees Learned Of By You Prior To The Policy Period**

         Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

      c. **Acts Of Employees, Managers, Directors, Trustees Or Representatives**

         Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

         (1) Whether acting alone or in collusion with other persons; or

         (2) While performing services for you or otherwise;

         except when covered under Insuring Agreement A.1.

      d. **Confidential Information**

         Loss resulting from:

         (1) The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

© ISO Properties, Inc., 2005

CR 00 22 05 06

(2) The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

e. **Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

f. **Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this policy including, but not limited to, loss resulting from:

(1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

(2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this policy.

(3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

g. **Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement A.2.

h. **Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

i. **Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

j. **War And Military Action**

Loss or damage resulting from:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. Insuring Agreement A.1. does not cover:

a. **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

b. **Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

c. **Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements A.3., A.4. and A.5. do not cover:

a. **Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

b. **Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

c. **Fire**

Loss or damage resulting from fire, however caused, except:

(1) Loss of or damage to "money" and "securities"; and

(2) Loss from damage to a safe or vault.

 © ISO Properties, Inc., 2005

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

(1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

(a) On the basis of unauthorized instructions;

(b) As a result of a threat to do bodily harm to any person;

(c) As a result of a threat to do damage to any property;

(d) As a result of a threat to introduce a denial of service attack into your computer system;

(e) As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

(f) As a result of a threat to contaminate, pollute or render substandard your products or goods; or

(g) As a result of a threat to disseminate, divulge or utilize:

(i) Your confidential information; or

(ii) Weaknesses in the source code within your computer system.

(2) But, this Exclusion does not apply under Insuring Agreement A.5. to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

(a) Had no knowledge of any threat at the time the conveyance began; or

(b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

4. **Insuring Agreement A.6. does not cover:**

**a. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b. Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

5. **Insuring Agreement A.7. does not cover:**

**COMPUTER FRAUD**

Loss resulting from the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E. Conditions**

1. **Conditions Applicable To All Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this policy is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this policy. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

© ISO Properties, Inc., 2005

b. **Cancellation Of Policy**

(1) The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

(2) We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(a) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(3) We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

(4) Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

(5) If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

(6) If notice is mailed, proof of mailing will be sufficient proof of notice.

c. **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

d. **Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

(1) This policy;

(2) The property covered under this policy;

(3) Your interest in the property covered under this policy; or

(4) A claim under this policy.

e. **Consolidation – Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

(1) You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

(2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

f. **Cooperation**

You must cooperate with us in all matters pertaining to this policy as stated in its terms and conditions.

g. **Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.

(2) Submit to examination under oath at our request and give us a signed statement of your answers.

(3) Produce for our examination all pertinent records.

(4) Give us a detailed, sworn proof of loss within 120 days.

(5) Cooperate with us in the investigation and settlement of any claim.

h. Employee Benefit Plans

(1) The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement A.1.

(2) If any Plan is insured jointly with any other entity under this policy, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement A.1. that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement A.1. is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(4) If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

(5) If two or more Plans are insured under this policy, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence", will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

(6) The Deductible Amount applicable to Insuring Agreement A.1. does not apply to loss sustained by any Plan.

i. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the Policy Period shown in the Declarations and up to 3 years afterward.

j. Extended Period To Discover Loss

We will pay for loss that you sustained prior to the effective date of cancellation of this policy, which is "discovered" by you:

(1) No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(2) No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

k. Inspections And Surveys

(1) We have the right to:

(a) Make inspections and surveys at any time;

(b) Give you reports on the conditions we find; and

(c) Recommend changes.

(2) We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

(a) Are safe or healthful; or

(b) Comply with laws, regulations, codes or standards.

(3) Paragraphs k.(1) and k.(2) apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

l. Joint Insured

(1) If more than one insured is named in the Declarations, the first Named Insured will act for itself and for every other insured for all purposes of this policy. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

    © ISO Properties, Inc., 2005    CR 00 22 05 06

(2) If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

(3) An "employee" of any Insured is considered to be an "employee" of every Insured.

(4) If this policy or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

   (a) No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

   (b) No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

(5) We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

(6) Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

m. **Legal Action Against Us**

You may not bring any legal action against us involving loss:

(1) Unless you have complied with all the terms of this policy;

(2) Until 90 days after you have filed proof of loss with us; and

(3) Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

n. **Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this policy.

o. **Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this policy, our obligations are limited as follows:

(1) **Primary Insurance**

When this policy is written as primary insurance, and:

   (a) You have other insurance subject to the same terms and conditions as this policy, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

   (b) You have other insurance covering the same loss other than that described in Paragraph (1)(a), we will only pay for the amount of loss that exceeds:

      (i) The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

      (ii) The Deductible Amount shown in the Declarations;

      whichever is greater. Our payment for loss is subject to the terms and conditions of this policy.

(2) **Excess Insurance**

   (a) When this policy is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this policy.

   (b) However, if loss covered under this policy is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

© ISO Properties, Inc., 2005

p. **Ownership Of Property; Interests Covered**

The property covered under this policy is limited to property:

(1) That you own or lease; or

(2) That you hold for others whether or not you are legally liable for the loss of such property.

However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

q. **Policy Bridge – Discovery Replacing Loss Sustained**

(1) If this policy replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate at the time this policy became effective:

(a) We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

(b) However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

(2) The Other Insurance Condition E.1.o. does not apply to this Condition.

r. **Premiums**

The first Named Insured shown in the Declarations:

(1) Is responsible for the payment of all premiums; and

(2) Will be the payee for any return premiums we pay.

s. **Records**

You must keep records of all property covered under this policy so we can verify the amount of any loss.

t. **Recoveries**

(1) Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this policy.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

u. **Territory**

This policy covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

v. **Transfer Of Your Rights And Duties Under This Policy**

(1) Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

(2) If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

w. **Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

© ISO Properties, Inc., 2005
CR 00 22 05 06

x. Valuation – Settlement

(1) The value of any loss for purposes of coverage under this policy shall be determined as follows:

(a) Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

(i) At face value in the "money" issued by that country; or

(ii) In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(b) Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

(i) Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

I. Market value of the "securities" at the close of business on the day the loss was "discovered"; or

II. The Limit of Insurance applicable to the "securities".

(c) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(i) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

(iii) The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs x.(1)(c)(i) through x.(1)(c)(iii), we will not pay on a replacement cost basis for any loss or damage:

i. Until the lost or damaged property is actually repaired or replaced; and

ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We will, at your option, settle loss or damage to property other than "money":

(a) In the "money" of the country in which the loss or damage occurred; or

(b) In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(3) Any property that we pay for or replace becomes our property.

2. Conditions Applicable To Insuring Agreement A.1.

a. Termination As To Any Employee

This Insuring Agreement terminates as to any "employee":

(1) As soon as:

(a) You; or

(b) Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

© ISO Properties, Inc., 2005

(2) On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition E.1.u. for a period of not more than 90 consecutive days.

**3. Conditions Applicable To Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement A.2.

**b. Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.u. does not apply to Insuring Agreement A.2.

**4. Conditions Applicable To Insuring Agreements A.4. And A.5.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement A.5., we will only pay for the amount of loss you cannot recover:

(1) Under your contract with the armored motor vehicle company; and

(2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

(1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

(2) Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable To Insuring Agreement A.6.**

**a. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.u. does not apply to Insuring Agreement A.6.

**F. Definitions**

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

4. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

© ISO Properties, Inc., 2005   CR 00 22 05 06

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

5. "Employee":

a. "Employee" means:

(1) Any natural person:

(a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

(4) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

(b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

(5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

(6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

(7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy; or

(8) Any of your "managers", directors or trustees while:

(a) Performing acts within the scope of the usual duties of an "employee"; or

(b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 5.a.

6. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

b. A written instruction (other than those described in Insuring Agreement A.2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

9. "Funds" means "money" and "securities".

10. "Manager" means a person serving in a directorial capacity for a limited liability company.

11. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

12. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

13. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value; and

   b. Travelers checks, register checks and money orders held for sale to the public.

14. "Occurrence" means:

   a. Under Insuring Agreement A.1.:

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

   b. Under Insuring Agreement A.2.:

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

c. Under All Other Insuring Agreements:

   (1) An individual act or event;

   (2) The combined total of all separate acts or events whether or not related; or

   (3) A series of acts or events whether or not related;

   committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this policy.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

   a. Caused or threatened to cause that person bodily harm; or

   b. Committed an obviously unlawful act witnessed by that person.

18. "Safe burglary" means the unlawful taking of:

   a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   b. A safe or vault from inside the "premises".

19. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

20. "Theft" means the unlawful taking of property to the deprivation of the insured.

   © ISO Properties, Inc., 2005   CR 00 22 05 06

21. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

   a. By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

   b. By means of written instructions (other than those described in Insuring Agreement A.2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

22. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

## Exhibit 2

### Itemized Statement of Stolen Surplus Funds

| Borrower | Case # | Amount |
|----------|--------|--------|
| Shimel | 10-193131 | $44,133.75 |
| Berhane | 08-138270 | $52,470.62 |
| Rose | 09-158636 | $110,266.08 |
| Kregar | 10-2-1155 | $347,075.02 |
| Paul | 09-158744 | $9,907.93 |
| Jenkins | 10-194051 | $70,845.40 |
| Vosilus | 09-167565 | $72,967.93 |
| Rohyans-Stump | 09-173455 | $77,536.68 |
| Vessali | 10-184951 | $492,300.12 |
| Longfellow | 10-189727 | $30,164.76 |
| Munnerlyn | 10-181661 | $15,668.01 |
| | Total: | $1,323,336.30 |